UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 20-40015 (TSH) |
| ) | |
| AUSTIN NEDVED, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## SENTENCING MEMORANDUM OF THE UNITED STATES

On December 17, 2020, defendant Austin Nedved pleaded guilty to each of two counts in an Information charging him with wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1343 and 2 (Count 1), and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count 2). In its Presentence Investigation Report ("PSR"), the Probation Office assigns Nedved to an Offense Level of 29 in Criminal History Category of IV. The corresponding Guidelines Sentencing Range is 121 to 151 months.

For the reasons stated below, and consistent with its obligations in a plea agreement with the defendant under Fed. R. Crim. P. 11(c)(1)(C), (Docket No. 12), the United States respectfully requests that the Court sentence Nedved to 97 months' and 17 days' imprisonment, with 12 months of the Court's sentence to run consecutively to the 94-month sentence Nedved is currently serving as a result of his conviction in the Eastern District of Kentucky. (PSR ¶ 50). The Court should also order Nedved to pay a fine of $15,000 (unless it determines Nedved is not able, and not likely to become able, to pay a fine); to serve 3 years' supervised release, to pay $569,750.80 in restitution, (PSR ¶ 99), and to forfeit the amounts alleged in the Information and agreed upon in the plea agreement.

<u>THE OFFENSE</u>

Between January 2018 and July 2019, Nedved aided and abetted a scheme to defraud vulnerable victims by selling Bitcoin to them so that the victims could send money overseas to the perpetrators of the fraud.  Nedved also conspired with others to cash Bitcoin, knowing or being willfully blind to the fact that the cash constituted the proceeds of unlawful activities. (PSR ¶ 8).

As described in the PSR, Nedved ran a Bitcoin-for-cash business, Cleveland Trading Center, that he advertised on the internet using the screen name "USMC1991".  Nedved accepted cash, cashier's checks, money orders, and wire transfers from prospective Bitcoin buyers, either (1) in person; (2) through the U.S. mail; or (3) through shared branching deposits into accounts Nedved controlled at federal credit unions.  (PSR ¶ 9).  When Nedved received cash from his buyers, he released Bitcoin that he owned or had purchased elsewhere to electronic Bitcoin addresses (known as wallets) that his customers provided.  (PSR ¶ 10).

Online romance and other scam artists, who used various ruses to convince victims to send Bitcoin to them overseas, made liberal use of Nedved's business.  (PSR ¶¶ 12-13). Between March 2018 and June 2019, five victims, among others, contacted Nedved to purchase Bitcoin:  a 78-year old widow sending money to an overseas love interest (Victim 1); the widow of a retired NYPD officer sending her home's equity abroad (Victim 2); a Georgia man who was told he had won a foreign lottery (Victim 3); a 63-year old New Mexico woman who believed she was engaged to an American businessman on hard times in Dubai (Victim 4); and a retired home health aide from Tennessee on a fixed income, who had been promised a $1 million government assistance grant in exchange for smaller "advance" payments in cash (Victim 5). (PSR ¶¶ 14-25).  Online accounts used to scam some of the victims also contacted Nedved

around the same time to negotiate the purchases of Bitcoin, presumably on the victims' behalf. (PSR ¶ 20).

Nedved and a coconspirator, Individual 1, sold these five victims more than $569,000 in Bitcoin, knowing or being willfully blind to the fact that the victims' cash was the proceeds of romance and lottery schemes.  (PSR ¶ 26).  The victims' communications with Nedved and Nedved's electronic communications with others make clear that Nedved understood that he was dealing with fraud victims (or at least that he ran his business in a way that would allow him to deny that he was aiding and abetting fraud).  For example, after selling $100,000 in Bitcoin to Victim 1 in a parking lot in Kittery, Maine, Nedved messaged an individual with a West African telephone number that he had "sold $100,000 worth of Bitcoin to some seventy something year old woman who wanted to send money to her 'fiance' somewhere in Africa."  (PSR ¶ 17). Nedved told the same individual, "I don't do romance stuff" – "I just sell bitcoin to the women who want to send it [to] their 'boyfriends' or 'fiances' who are out of the country."  (PSR ¶ 18). Despite these acknowledgements, Nedved later wrote to Victim 3—who was trying to recover money that he had been duped into sending to Nedved—that Nedved was simply a "virtual currency investor" and could do nothing for Victim 3.  (PSR ¶ 22).

*The Kentucky Matter*

Between February 2015 and November 2017, before engaging in the conduct for which he is charged in this case, Nedved sold Bitcoin in connection with the operations of the Alexandria Online Auction Fraud Network ("AOAFN").  The AOAFN defrauded U.S. victims into believing that they were purchasing cars online and into sending cash payments to Nedved and other intermediaries.  Through an individual who later cooperated with the government's investigation, Nedved provided the scheme with cash-for-Bitcoin services that returned the

proceeds of the fraud to Eastern Europe.  He also used Massachusetts addresses and fake identities to further the scheme.  (PSR ¶ 50).

Federal prosecutors in the Eastern District of Kentucky indicted Nedved for his role in the AOAFN, and he was arrested in February 2019 on those charges.  While released on conditions in the Kentucky case, in June 2019, he sold Bitcoin to Victim 5.  On July 30, 2020, Nedved received a 94-month sentence—a 70-month sentence followed by a consecutive 24-month sentence for a conviction under 18 U.S.C. § 1028A (aggravated identity theft). (PSR ¶ 50).

## THE GUIDELINES CALCULATION

With one exception, the United States agrees with the Probation Office's Guidelines calculation in the PSR.

The PSR applies a three-level enhancement under U.S.S.G. § 3C1.3 because Nedved committed the Massachusetts offense while released on conditions in the Kentucky matter.  (PSR ¶ 40).  That enhancement applies "[i]f a statutory sentencing enhancement under 18 U.S.C. § 3147 applies."  18 U.S.C. § 3147, in turn, requires that the Court impose a consecutive sentence of not more than 10 years if a person is "convicted of an offense committed while released under [the Bail Reform Act]."

Because Nedved offended while on release from the Eastern District of Kentucky (*i.e.*, by selling Bitcoin to Victim 5), he is chargeable with the § 3147 sentencing enhancement and the corresponding 3-level enhancement under § 3C1.3.  The Information, however, did not charge Nedved with a violation of § 3147, the plea agreement did not contemplate an enhancement under § 3C1.3, and it is not clear to the United States that Nedved will have received adequate notice of the Court's intent to proceed under §§ 3147 and 3C1.3.  Notably, under the Background

to § 3C1.3, an enhancement under § 3147 applies after "appropriate sentencing notice".  The

First Circuit has noted that it would "normally expect the government to give a defendant pre-

trial notice of a possible sentence enhancement," *United States v. Craveiro*, 907 F.2d 260, 264

(1st Cir. 1990) (interpreting a mandatory sentencing enhancement under 18 U.S.C. § 924(c)), but

it ultimately held that there was no statutory requirement to do so.  Other courts have held

appropriate sentencing notice would be the signing of a pre-release warning about the

consequences of violation and/or a later charge under § 3147 by indictment, information, or

similar formal notice.  *See*, *e.g.*, *United States v. Borker*, 2019 WL 1790054, *21-22 (S.D.N.Y.

Apr. 24, 2019).  *But see United States v. Rosas*, 615 F.3d 1058, 1065 (9th Cir. 2009) (PSR gives

pre-sentence notice, "satisfying both constitutional due process requirements and the Guidelines

notice requirement" for an enhancement under §§ 3147 and 3C1.3); *United States v. Browning*,

61 F.3d 752, 756-57 (10th Cir. 1995) (same).

 In this case, the addition of a § 3C.13 enhancement would take Nedved's otherwise

applicable GSR to 121 to 151 months.  If the Court were to sentence Nedved to the bottom of

that sentencing range (as the parties contemplated in their plea agreement), the resulting 121-

month sentence would cause at least 27 months of the Court's sentence to run consecutively to

Nedved's 94-month sentence in the Kentucky matter.  That sentence would violate the spirit, if

not the letter, of the parties' plea agreement, in which the Court, if it accepts Nedved's plea, will

impose a sentence that results in Nedved serving only 12 extra months in custody.

 Under these unique circumstances, and where the United States had not provided notice

of its intent to proceed under 18 U.S.C. § 3147, the United States requests that the Court not

impose the three-level enhancement under § 3C1.3.  Alternatively, the Court should vary its

sentence downward for the reasons described below to account for the additional 12 months that the plea agreement contemplates Nedved serving.

<u>THE REQUESTED SENTENCE</u>

For the reasons set forth below and to be discussed at the sentencing hearing, the United States requests that the Court sentence Nedved to 97 months' and 17 days' imprisonment, with 12 months of that sentence to run consecutively to Nedved's total sentence in the Kentucky matter (and the balance of it to run concurrently with the Kentucky matter). The Court should also order 3 years' supervised release, a $15,000 fine (unless the Court finds that the defendant is not able, and is unlikely to become able, to pay a fine); a $200 special assessment, forfeiture as charged in the Information, and $569,750.80 in restitution payable to Victims 1 through 5 in proportion to their losses as described in the PSR.

The GSR captures the seriousness of Nedved's conduct. Whether he acted willfully or with willful blindness, Nedved assumed a vital role in frauds targeting exceptionally vulnerable victims. By turning a blind eye to the reason these victims were sending money overseas, Nedved chose to profit from their misfortune. In the absence of another matter, a Guidelines sentence would deter Nedved individually and the increasingly large community of Bitcoin-for-cash entrepreneurs generally.

A fully consecutive Guidelines sentence, however, would imprison Nedved for approximately 17 years. This is excessive for a non-violent offender with a history of substance abuse, mental health issues, and a history of military service (although some of it less than honorable). (PSR ¶¶ 67-74, 76-77). While Nedved's Massachusetts and Kentucky convictions are for distinct offenses involving different time periods, scams, conspirators, and victims, Nedved played essentially the same role in both schemes. He sold Bitcoin for cash to enable

himself and fraudsters to profit at the expense of victims.  As it happened, the Secret Service (in Kentucky) and Homeland Security Investigations (in Massachusetts) separately and relatively simultaneously identified Nedved's illegal conduct, and he was charged in two jurisdictions.

Through the plea agreement, the parties have attempted to recommend to the Court the additional punishment that the second conviction requires.  There are more victims and more loss, and Nedved needs more deterrence, given his history of release violations.  The parties place that number at 12 more months in prison than Nedved will spend on his Kentucky conviction.[1]

---

[1] Because of 327 days of pre-sentencing custodial credit Nedved received in the Kentucky case and the 10-month delay between Nedved's Kentucky sentencing (July 2020) and his Massachusetts sentencing (April 2021), Nedved's expected release date on his Kentucky matter is May 10, 2026.  Because the Bureau of Prisons will administratively combine his Kentucky and Massachusetts sentences, to order an extra 12 months' imprisonment, the Court should sentence Nedved to 97 months' and 17 days' imprisonment, pronouncing 12 months of its sentence to be consecutive to the Kentucky matter.

<u>CONCLUSION</u>

For all of the reasons stated above, the United States asks the Court to sentence Nedved to 97 months and 17 days in prison, with 12 months of that sentence to be served consecutively to his sentence on the Kentucky matter; to pay a $15,000 fine; to serve 3 years of supervised release, to pay $569,750.80 in restitution, and to order forfeiture as provided for in the parties' plea agreement.

Respectfully submitted,

NATHANIEL MENDELL
ACTING UNITED STATES ATTORNEY


BY:/s/Seth B. Kosto
SETH B. KOSTO
Assistant United States Attorney
One Courthouse Way
Boston, Massachusetts 02210
(617) 748-3230

April 9, 2021
Boston, Massachusetts

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have caused a true copy of the Sentencing Memorandum of the United States on counsel for the defendant, Geoffrey Nathan, Esq., via the ECF system.

/s/Seth B. Kosto
SETH B. KOSTO
Assistant United States Attorney


April 9, 2021
Boston, Massachusetts

8